MURDOCK, Justice.
Hensel Phelps Construction Company (“Hensel Phelps”) petitions this Court for a writ of mandamus directing the trial court to vacate its February 14, 2008, order denying Hensel Phelps’s motion to dismiss Thomas Childers’s claim against it and to enter a dismissal in its favor. We grant the petition and issue the writ.

Facts and Procedural History

On October 28, 2003, while acting within the line and scope of his employment with Wal-Mai-t Stores, Inc., Childers injured his leg when he fell while performing maintenance on the roof of the Wal-Mart distribution-center building in Pike County. Childers filed a complaint on October *1001 27, 2005, one day before the expiration of the statute of limitations, against Carter-Burgess, Inc. (“Carter-Bui’gess”), Nixon & Laird Architects/Engineers, P.C. (“Nixon & Laird”), his supervisor at Wal-Mart, Charles Murray, and several fictitiously named defendants allegedly “responsible for constructing, building and/or maintaining the premises in question, including the stairwell-hatch-area, where the accident which is the subject of this case occurred.” The complaint stated with regard to the fictitiously named defendants that their “true and correct names are unknown at present but will be added by amendment when ascertained.”
The summons and complaint were mailed to the location Childers believed to be the principal address of Carter-Burgess and Nixon & Laird on October 27, 2005.[1] Childers did not serve any discovery with the summons and complaint. Childers’s counsel claims that the Pike County circuit clerk informed him on November 3, 2005, that service had been perfected on Nixon & Laird, and that on November 7, 2005, the clerk’s office informed him that service had been perfected on Carter-Burgess. The service copies of the summons and complaint intended for Nixon & Laird and for Carter-Burgess, however, were returned as undeliverable on November 15, 2005.
Murray was served, and on November 28, 2005, he filed a motion to dismiss the claims against him. The motion was set for a hearing several times; Hensel Phelps alleges — and Childers does not dispute — • that each time the hearing date neared, Childers requested that it be postponed to allow for service of Carter-Burgess and Nixon & Laird. Childers’s counsel contends that he made numerous attempts to serve both Nixon & Laird and Carter-Burgess, but that, at the time, Carter-Burgess maintained approximately 40 locations nationwide, making service difficult. Wal-Mart Stores, Inc., moved to intervene on February 23, 2006, and the trial court granted Wal-Mart’s motion on February 27, 2006.
On July 5, 2006, Childers served The Corporation Company, the registered agent for Carter-Burgess. On August 3, 2006, Carter-Burgess and Nixon & Laird filed a motion to dismiss the claims against them, alleging that Childers failed to serve them in a timely manner. Following a January 9, 2007, hearing, the trial court denied the motion, provided that Childers perfect service on Nixon & Lair’d within 30 days. Service was perfected on Nixon & Laird on February 5, 2007. Childers’s counsel avers that, once service was perfected on Nixon & Lair’d, he began talking with Carter-Burgess’s attorneys about the identities of other possible entities involved with the construction of the Pike County Wal-Mart distribution-center building, and that in these conversations Hensel Phelps’s name was mentioned for the first time.
On February 6, 2007, Carter-Burgess and Nixon & Laird filed a notice to serve discovery on Childers, Murray, and inter-venor Wal-Mart. On March 9, 2007, counsel for Carter-Burgess wrote Childers’s counsel and Wal-Mart’s counsel to alert them that their clients were overdue in responding to Carter-Burgess’s discovery motion. Carter-Burgess filed a motion to compel discovery against Childers on March 22, 2007. The trial court granted this motion on May 8, 2007, ordering Childers to respond within 30 days. Childers responded to the Carter-Burgess discovery request on June 7, 2007. On May 10, 2007, Carter-Burgess filed a notice of intent to serve subpoena on nonpar *1002 ties, including Hensel Phelps. On June 6, 2007, Carter-Burgess served a nonparty subpoena on Hensel Phelps.
On September 13, 2007, 23 months after the filing of the original complaint, Child-ers filed an amended complaint that added Hensel Phelps as a defendant, assex-ting a claim of negligence and/or wantonness against all the defendants named in the amended complaint. It is undisputed that Childers never filed any formal discovery before filing the amended complaint.
Hensel Phelps filed its motion to dismiss on October 31, 2007, asking the trial court to dismiss the claim against it on the ground that the statute of limitations had expired with regard to any claims against it. Childers did not file a response to the motion to dismiss. On Febi’uary 14, 2008, the trial court denied Hensel Phelps’s motion to dismiss, stating, in pertinent part: “[T]he Court having reviewed and considered the [motion to dismiss], the supporting brief, and argument of counsel, and not being pei’suaded that [Hensel Phelps] is entitled to the requested relief, it is ... ORDERED AND ADJUDGED that the above referred to motion to dismiss is denied.” (Capitalization in original.) Hensel Phelps subsequently filed this petition for a writ of mandamus.

Standard of Review

“ ‘ “A writ of mandamus is an extraordinai’y remedy, and it 'will be issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an impei'ative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court.’ ” ’
“Ex parte Monsanto Co., 862 So.2d 595, 604 (Ala.2003) .... A writ of mandamus is the proper means by which to seek review of a denial of a motion to dismiss filed by a party originally listed as a fictitiously named defendant ‘when “the undisputed evidence shows that the plaintiff failed to act with due diligence in identifying the fictitiously named defendant as the party the plaintiff intended to sue.” ’ Ex parte Chemical Lime of Alabama, Inc., 916 So.2d 594, 596-97 (Ala.2005) (quoting Ex parte Snow, 764 So.2d 531, 537 (Ala.1999)) ....”
Ex parte Nationwide Ins. Co., 991 So.2d 1287, 1289-1290 (Ala.2008).

Analysis

The question presented is whether the trial court exceeded its discretion in denying Hensel Phelps’s motion to dismiss, in essence determining that Childei's’s substitution of Hensel Phelps for one of the fictitiously named defendants in the amended complaint of September 13, 2007, relates back to the filing of the original complaint of October 27, 2005. This Court has previously stated that Rule 9(h) and Rule 15(c)(4), Ala. R. Civ. P., “‘allow a plaintiff to avoid the bar of a statute of limitations by fictitiously naming defendants for which actual parties can later be substituted.’ ” Ex parte Chemical Lime of Alabama, Inc., 916 So.2d 594, 597 (Ala. 2005) (quoting Fulmer v. Clark Equip. Co., 654 So.2d 45, 46 (Ala.1995)). Rule 9(h), Ala. R. Civ. P., provides:
“When a party is ignoi*ant of the name of an opposing party and so alleges in the party’s pleading, the opposing party may be desigxiated by any name, and when that party’s true name is discovered, the process and all pleadings and proceedings in the action may be amended by substituting the true name.”
Rule 15(c)(4), Ala. R. Civ. P., provides that “[a]n amendment of a pleading relates back to the date of the original pleading when ... relation back is permitted by *1003 principles applicable to fictitious party-practice pursuant to Rule 9(h), Ala. R. Civ. P.”
In order to invoke the relation-back principle of Rule 15(c) in regard to fictitious-party practice under Rule 9(h), a plaintiff
“(1) must state a cause of action against the party named fictitiously in the body of the original complaint and (2) must be ignorant of the identity of the fictitiously named party, in the sense of having no knowledge at the time of the filing that the later-named party was in fact the party intended to be sued.”
Crawford v. Sundback, 678 So.2d 1057, 1059 (Ala.1996).
“A plaintiff is ignorant of the identity of a fictitiously named defendant when, after exercising due diligence to ascertain the identity of the party intended to be sued, he lacks knowledge at the time of the filing of the complaint of facts indicating to him that the substituted party was the party intended to be sued. Likewise, to invoke the relation-back principle of Rule 15(c), a plaintiff, after filing suit, must proceed in a reasonably diligent manner to determine the true identity of a fictitiously named defendant and to amend his complaint accordingly.”
Ex parte FMC Corp., 599 So.2d 592, 593-94 (Ala.1992) (emphasis added). Thus, it is incumbent upon the plaintiff to exercise due diligence to determine the true identity of defendants both before and after filing the original complaint. It is also incumbent upon the plaintiff to “substitute the named defendant for the fictitious party within a reasonable time after determining the defendant’s true identity,” and “ ‘the same policy considerations which require a plaintiff to amend his complaint within a reasonable time after learning the defendant’s true identity also require the plaintiff to proceed in a reasonably diligent manner in determining the true identity of the defendant.’ ” Crawford, 678 So.2d at 1060 (quoting Kinard v. C.A. Kelly & Co., 468 So.2d 133, 135 (Ala.1985) (emphasis added)).
Hensel Phelps contends that the evidence is undisputed that Childers did not exercise due diligence in attempting to ascertain its true identity and that Child-ers did not amend his complaint within a reasonable time after determining Hensel Phelps’s true identity. For his part, Childers contends that it is “very much in dispute” whether he “did nothing to ascertain the names of fictitiously named parties.” He argues that “[f]ormal discovery is not the only investigative means by which to determine the identity of a party” and that Hensel Phelps “cannot know what steps were taken ... to determine the identity of the fictitiously named parties.” (Childers’s brief at 6.)
In making this argument, Childers lowers the standard for ascertaining the true identity of a fictitiously named defendant from “due diligence” to doing “something.” He attempts to force Hensel Phelps into the impossible position of proving a negative: demonstrating that Childers did absolutely nothing to obtain the company’s true identity when a defendant’s knowledge of a plaintiffs activity is necessarily limited to evidence in the record.
The facts before us show that 23 months elapsed between the filing of the original complaint and the filing of the amended complaint that named Hensel Phelps as a defendant. For all that appears from the materials before us and from the briefs of the parties, during this 23 months, Child-ers conducted little, if any, informal discovery in an effort to determine the identity of Hensel Phelps as one of the fictitiously named defendants. In that period, Child-ers also failed to conduct any formal dis *1004 covery for the purpose of ascertaining the true identities of the fictitiously named defendants.[2] Although it is true that formal discovery is not the only method of determining the identity of a fictitiously named defendant, it commonly is vital to demonstrating due diligence because it provides objective evidence of the plaintiffs case activity. Furthermore, Childers did not amend his complaint and specifically name Hensel Phelps as a defendant until seven months after he discovered its identity and over three months after Carter-Burgess filed a nonparty subpoena on Hensel Phelps.
“The recalcitrant plaintiff cannot ... use the [relation-back] rule to gain what might otherwise amount to an open-ended statute of limitations.” Kinard, 468 So.2d at 135. This Court has determined on numerous occasions that case activity similar to or even greater than Childers’s demonstrated activity in this case constituted a lack of due diligence on the part of the plaintiff. See, e.g., Crowl v. Kayo Oil Co., 848 So.2d 930 (Ala.2002) (finding that plaintiffs failure to do anything for over a year and a half to ascertain the identity of the defendant constituted a lack of due diligence); Jones v. Resorcon, Inc., 604 So.2d 370 (Ala.1992) (finding lack of due diligence in determining the identity of a fictitiously named manufacturer of a fan when plaintiff failed to seek an order from the court compelling inspection of the fan at issue); Ex parte Klemawesch, 549 So.2d 62 (Ala.1989) (concluding that plaintiff did not act with due diligence when she did not initiate any discovery until over two years after filing the original complaint); and Bowen v. Cummings, 517 So.2d 617 (Ala. 1987) (holding that plaintiff failed to comply with the spirit or letter of Rule 9(h) and Rule 15(c)(4), Ala. R. Civ. P., when he made no effort to ascertain the identity of fictitiously named defendant doctor).
In short, “[f]ictitious party practice ... was not intended for use whenever it is merely inconvenient for the plaintiff to learn the name of the true defendant.” Bowen, 517 So.2d at 618. Childers plainly failed to comply with the rules governing fictitious-party practice in his overall delay in ascertaining Hensel Phelps’s identity and in waiting seven months after obtaining knowledge of the identity of Hensel Phelps as a defendant to amend his complaint. Accordingly, the petition for the writ of mandamus is granted. The trial court is directed to vacate its order denying Hensel Phelps’s motion to dismiss and to enter a dismissal for Hensel Phelps on Childers’s claim against it.
PETITION GRANTED; WRIT ISSUED.
COBB, C.J., and LYONS, STUART, and BOLIN, JJ., concur.

. Childers states that, at that time, Nixon & Laird was a subsidiary of Carter-Burgess.

. Childers’s only defense to this lack of filing discovery is the length of time it took him to properly serve Carter-Burgess and Nixon & Laird. The facts show, however, that Child-ers must shoulder a large part of the blame for the significant delay in perfecting service on these entities.